# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CODIE LEE GREGORY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 6:14-3272 - MDH ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of his application for Social Security Disability Insurance benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1385. Plaintiff has exhausted his administrative remedies and the matter is now ripe for judicial review. This Court has carefully reviewed the record before it, and finds the ALJ's opinion is supported by substantial evidence on the record as a whole and the decision of the Commission is affirmed.

## BACKGROUND

Plaintiff filed his application for benefits on or about July 12, 2011. Plaintiff was born in 1987 and claims he became disabled beginning May 1, 2011. Plaintiff has an eleventh grade education, and has subsequently worked as a construction worker. He filed his application based on thrombophlebitis, manic depression, bipolar disorder, and pulmonary embolus. Plaintiff quit working in May 2011 due to the alleged disabilities, and has not worked since.

In January 2002, Plaintiff received cognitive tests through a cooperative diagnostic report revealing average cognitive skills. However, various teachers and faculty showed concern with social skills, problem solving skills, vocabulary, and reading proficiency. Plaintiff began an individualized educational program in late February 2003 and received improved grades that semester. Nonetheless, he ultimately quit school in November 2003.

Plaintiff appears to have had no further significant testing, psychological or otherwise, until 2011. On June 30, 2011, Plaintiff was admitted (for a second time that month) to Carson Tahoe Regional Healthcare center for increasing pain and was eventually diagnosed with bilateral pulmonary emboli, hemoptysis and tobacco use. Doctors recommended the cessation of tobacco use. However, Plaintiff did not appear to comply. Plaintiff continued to see various doctors for an array of physical and mental concerns.[1]

Plaintiff was initially denied his social security claim on August 25, 2011. He appealed the decision on October 10, 2011 and requested a hearing. At the hearing on September 7, 2012, Plaintiff testified his blood clot disorder in his legs, along with his required blood thinners, left him unable to stand for long periods of time and intolerant of heat. He also testified his bipolar disorder may have led to him losing a job, and that his depression affected his sleep, appetite, energy level, and ability to concentrate. During the hearing, a vocational expert testified an individual similar to Plaintiff would be capable of performing certain jobs, such as a riveting machine operator, twisting machine operator, boring machine tender, folding machine operator, and injection mold machine tender. The expert testified Plaintiff could not perform past work as a construction worker due to exposure of extreme temperatures and hazards.

---

[1] Plaintiff's full medical history is set forth in the record before the Court. The Court finds it unnecessary to reproduce the entire record here.

The ALJ found that Plaintiff did have severe impairments that included bipolar disorder, anxiety disorder, a history of learning disability, a history of deep venous thrombosis, and pulmonary embolism. However, the ALJ found that he did not have impairment, or combination of impairments, listed in or medically equivalent to one contained in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained the residual functioning capacity (RFC) to perform a range of simple, unskilled, low-stress work. The ALJ found the impairments would not preclude Plaintiff from performing work that exists in significant numbers in the national economy, and that he was ultimately not disabled. On December 7, 2012, the ALJ denied benefits to Plaintiff.

Plaintiff subsequently filed a request for review with the Appeals Council. This request was denied on April 15, 2014. The Appeals Council stated the additional evidence submitted by Plaintiff did not provide a basis for changing the ALJ's determination. The documents were made part of the record, and the Appeals Council noted that some of the documents were exact copies of Exhibits already in the record. In addition, the Medical Source Statement submitted was dated February 18, 2014 and the ALJ's determination was based on whether Plaintiff was disabled through December 7, 2012.

Plaintiff's current appeal argues the following alleged errors: 1) the ALJ erred in failing to give greater weight to the opinions of certain treating and examining physicians; 2) the ALJ erred in evaluating Plaintiff's RFC assessment; 3) the ALJ erred in his evaluation of Plaintiff's credibility; and 4) the Commissioner erred in not remanding the case for further consideration based on additional evidence.

3

Case 6:14-cv-03272-MDH   Document 19   Filed 06/29/15   Page 3 of 12

**DISCUSSION**

The Court's role in reviewing an ALJ's decision is to determine whether the "findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042-43 (8th Cir. 2007), citing, *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir.1999). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Id.* "The fact that some evidence may support a conclusion opposite from that reached by the Commissioner does not alone permit our reversal of the Commissioner's decision." *Id.,* citing, *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); and *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). If the record contains substantial evidence to support the Commissioner's decision, the Court may not reverse the decision simply because substantial evidence exists in the record that would have supported a contrary outcome. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). In other words, the Court cannot reverse simply because it would have decided the case differently. *Id.,* citing, *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Further, the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006).

In order to qualify for benefits under the Social Security Act and the accompanying regulations, Plaintiff must establish he is disabled. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010); citing, *Pate–Fires v. Astrue,* 564 F.3d 935, 942 (8th Cir.2009). "Disability is defined as the inability 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.'" *Id.*,

quoting 42 U.S.C. § 1382c(a)(3)(A). To determine disability, the ALJ follows an established five-step process that considers whether: (1) the claimant was employed; (2) he was severely impaired; (3) his impairment was, or was comparable to, a listed impairment; (4) he could perform past relevant work; and if not, (5) whether he could perform any other kind of work. *Id.*, citing, 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a).

### A. **Substantial Evidence Supports the ALJ's Consideration of Medical Opinions.**

Plaintiff argues that the ALJ failed to give proper weight to Dr. Olomon and Dr. Hoffmann's opinions and accorded too much weight to Dr. Forsyth's opinion.

Generally, a treating physician's opinion is given at least substantial weight under the Social Security Administration regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c), *see also Brown v. Colvin*, 2014 WL 1687430 *2 (W.D. Mo. 2014). However, such an opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Brown v. Colvin,* 2014 WL 1687430, at *2 (W.D. Mo. April 29, 2014); citing, *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). Rather, an "ALJ may discount or disregard the opinion of a treating physician where other medical assessments are more thoroughly supported or where a treating physician renders inconsistent opinions." *Id.;* citing, *Wildman v. Astrue*, 596 F.3d 959,964 (8th Cir. 2010).

"In determining how much weight to accord a physician's opinion, the ALJ must take into account a variety of considerations including: whether the opinion is supported with facts and evidence; whether the opinion is consistent with other evidence and opinions, including the physician's own notes; and whether the physician's specialty gives her[or him] greater credibility." *Id,* citing, 20 C.F.R. §§ 404.1527(c), 416.927(c); and *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). The Court does not re-weigh the evidence presented to the ALJ and

5

defers to the ALJ's determinations regarding the credibility of testimony, so long as it is supported by substantial evidence. See *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Further, a claimant's subjective complaints may be discounted if there are inconsistencies in the record as a whole. *Id.*

In the present case, the ALJ accorded Dr. Olomon's opinion less weight because he found Dr. Olomon's opinion was not based on psychological testing or review of medical records. Further, there was no indication that she practices in the field of mental illness. The ALJ found that Dr. Olomon's opinion was not supported by the medical record, was based on short term symptoms and claimant's self-reporting which rendered the opinion little weight. In addition, Dr. Olomon did not appear to assess Plaintiff's credibility and notes that his anxiety was tied to his father's death and not a long term mental illness. For these reasons, along with others, the ALJ gave the opinion little weight.

Second, Plaintiff claims the ALJ also failed to give Dr. Hoffmann's opinion proper weight. Dr. Hoffmann performed a one-time psychological evaluation on January 11, 2012, to determine Plaintiff's eligibility for Medicaid. Dr. Hoffmann diagnosed Plaintiff as having bipolar disorder and an unspecified anxiety disorder. The ALJ found that the opinion should be given partial weight because it did not indicate any functional limitations in Plaintiff and was based in part on self-reporting. Further, while the ALJ credited the diagnostic finding of this opinion, he held that it was "unhelpful with respect to the issue of specific functional limitations."

Lastly, Plaintiff argues Dr. Forsyth's opinion was given too much weight. The ALJ found that Dr. Forsyth's opinion was the most recent and most direct. Dr. Forsyth reviewed all past doctors' opinions, school records and medical records, including Dr. Hoffmann's psychological evaluation, in order to determine Plaintiff's functional limitations. Dr. Forsyth also

interviewed Plaintiff and his mother and performed a mental status determination of Plaintiff. Dr. Forsyth provided specific functional limitations and abilities in his opinion. The ALJ found that "this opinion, by an expert in psychological illness, is based on an analysis of the claimant's longitudinal history in the medical record, a full examination of the claimant and interviews of third parties" was consistent with the evidence as a whole. Plaintiff has not provided anything to establish that the ALJ's determination was not supported by evidence and as a result this Court finds the ALJ's determination should be affirmed.

### B. **Substantial Evidence Supports the ALJ's RFC Assessment.**

Plaintiff argues that the ALJ's determination of his RFC is not consistent with the evidence or adequately explained. Residual functional capacity is what a claimant can still do despite his limitations. See 20 C.F.R. § 416.945(a). It is an assessment based upon all of the relevant evidence including a claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. See 20 C.F.R. § 416.945(a). The responsibility for determining a claimant's RFC lies with the ALJ. See 20 C.F.R. § 416.946(a). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

However "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Id*. When a treating physician's opinions "are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010); citing, *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own

7

descriptions of his limitations." *Tellez v. Barnhart,* 403 F.3d 953, 957 (8th Cir. 2005), citing, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC. *Id.*

Here, the ALJ provided an extensive review of the relevant medical evidence, as previously referenced, and also reviewed the testimony of Plaintiff and the vocational expert. The ALJ found that Plaintiff was capable of simple, unskilled work involving routine, repetitive tasks within a low-stress environment where he would not be subject to customer service demands, thus acknowledging Plaintiff's psychological impairments. The ALJ found that Plaintiff could tolerate occasional interaction with supervisors and co-workers but no interaction with the public, as well as deeming he would work best independently rather than with a team. Further, as set forth in more detail below, the ALJ noted that Plaintiff's allegations of disability were not entirely credible.

In addition, the vocational expert's testimony supported the ALJ's determination. The vocational expert testified that Plaintiff could perform work such as a riveting machine operator, twisting machine operator, boring machine operator, folding machine operator, and injection mold machine tender, and while not recommending attempting previous work in the construction industry, noted the existence of a myriad of jobs still available in the national economy. The record supports the ALJ's decision that Plaintiff could perform work in other capacities. Therefore, for the reasons stated herein, the Court finds the ALJ's determination regarding Plaintiff's RFC is supported by substantial evidence on the record as a whole.

C. **The ALJ Did Not Err in Assessing Plaintiff's Credibility.**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. In determining credibility, an ALJ should consider the claimant's prior work history; and observations by third

8

Case 6:14-cv-03272-MDH   Document 19   Filed 06/29/15   Page 8 of 12

parties and treating and examining physicians relating to daily activities. Duration, frequency and intensity of the pain, dosage, effectiveness and side effects of medications, precipitating and aggravating factors, and functional restrictions are all considerations. *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). However, an ALJ "need not explicitly discuss each *Polaski* facto*r*." See *Strongson v. Barnhart*, F.3d 1066, 1072 (8th Cir. 2004). If there are inconsistencies as a whole, it is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints. *Id.*

Here, Plaintiff's testimony contained several inconsistencies with the medical evidence. For example, doctors repeatedly recommended that Plaintiff stop smoking, however medical notes from multiple doctors suggest that Plaintiff continues to smoke daily.[2] Plaintiff also alleged he could not work full-time due to a blood clot disorder that prevented him from standing for very long or working in the heat. As the ALJ noted, however, Plaintiff did not have any physical restrictions prescribed from medical providers for this alleged condition. Rather, the records reflect that Plaintiff was advised to maintain an active lifestyle as a preventative measure. Furthermore, the ALJ noted that Plaintiff's activities of daily living were inconsistent with his alleged disability. Plaintiff testified he cares for his 5 year old daughter, lives with his disabled mother, manages finances, and has scrapped metal in his free time to earn money. The ALJ further considered Plaintiff's credibility questionable due to the fact that he was not unduly restricted in other day-to-day activities, including cooking, caring for his dogs, using a computer, driving (with the use of a neck brace), and shopping for groceries with the use of an electric cart.

---

[2] The 8th Circuit has noted that an ALJ may properly consider that a claimant smoked cigarettes when regarding disability. Impairments that are controllable or amenable through treatment, including the cessation of smoking, are grounds for denying an application for benefits when Plaintiff did not follow medical advice without good reason. See *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (citing *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)).

9

Additionally, the ALJ questioned Plaintiff's credibility when he told a medical provider he had 47 blood clots since 2010, but there is nothing to verify his statement in the medical record.  Further, he told medical providers different reasons for why he lost his driver's license and had a record that he was found to be malingering with respect to his responses during mental health questioning.  Based on the record, the Court finds the ALJ did not commit error and was in a better position than this Court to assess Plaintiff's credibility.

### D. Plaintiff's Submission of New Evidence Was Immaterial.

Plaintiff argues that the Appeals Council erred, as a matter of law, by failing to properly evaluate the new and allegedly material evidence submitted after the ALJ's determination. Here, the Court is presented with evidence submitted by Plaintiff after the ALJ issued its determination. When subsequent evidence is submitted, the Court must determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." See *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).  The 8th Circuit has stated "this requires this court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing. As we have oft noted, 'this [is] a peculiar task for a reviewing court.' Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000), citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The court must decide if the evidence is material.

Here, the Court is not required to remand the case, as the additional evidence under Exhibit 13F was not markedly different from the original evidence submitted, and would be unlikely to sway the opinion of the ALJ.  Further, of the 37 pages of documents submitted, a number of those pages contained cover sheets, there were approximately 20 pages of Nursing

10

Assessments (which mostly contain lists of medication and medical history already described in the doctors' notes), all of which the ALJ previously reviewed. One new treatment note from Dr. Olomon found that Plaintiff's concentration level had largely remained the same and that his condition had even improved in other areas. Likewise, Dr. Boeke's additional treatment note was consistent with prior advice given to Plaintiff to elevate his legs when necessary. Dr. Boeke himself did not see this as becoming a common occurrence. Likely, neither additional treatment note would have changed the outcome of the ALJ's decision.

Furthermore, Exhibit 13F includes a treatment note from a psychologist dated September 27, 2011, and does not include any significant new information or any specific work-related recommendations or assessment of ability. Instead, it recommended therapy with a psychologist and referred Plaintiff to Dr. Olomon for medication, which would be unlikely to alter the ALJ's decision based on the evidence he had already received.

Lastly, attached to the Motion to Add New and Material Evidence with the Appeals Council was a Medical Source Statement and a MRI report dated January 30, 2014. In a Medical Source Statement based off of this MRI report, Dr. Boeke opined that Plaintiff could perform less than sedentary work, or a lower level of work that was suggested in other submitted opinions to the ALJ. However, this opinion, submitted by Plaintiff, did not appear to apply to the relevant time period that was analyzed by the ALJ. The ALJ evaluated Plaintiff's claim for disability through December 2012. Here, Dr. Boeke's opinion and the MRI were dated over a year after the ALJ's decision, thus the Appeals Council properly determined that the additional evidence was irrelevant at the time it was submitted.

As stated above, this Court finds there is substantial evidence in the record to support the ALJ's finding. The additional evidence, submitted by Plaintiff after the ALJ's determination,

was considered by the Appeals Council and made part of the record.  The Court does not find that remand of the case to the ALJ was required.  The ALJ's determination is supported by substantial evidence in the record as a whole, including the new evidence, and as such the Court affirms the determination.

## CONCLUSION

For the reasons set forth herein, there is substantial evidence on the record as a whole to support the ALJ's determination, and the Commissioner's decision denying benefits is **AFFIRMED.**


**IT IS SO ORDERED.**

DATED:       June 29, 2015                                    */s/ Douglas Harpool* _____

                                                       **DOUGLAS HARPOOL**
                                                       **UNITED STATES DISTRICT JUDGE**